**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LAUREN W., by and through her parents, JAMES W. and JEAN W.,<br>　　　　　　　　　　　　Plaintiffs<br><br>　　　　　v.<br><br>BOARD OF EDUCATION OF THE RADNOR TOWNSHIP SCHOOL DISTRICT,<br>　　　　　　　　　　　　Defendant | Civil Action<br><br>No 02 – cv – 4775 |

**PLAINTIFFS' PROPOSED FINDINGS OF FACT
AND CONCLUSIONS OF LAW**

　　　　Plaintiffs Lauren W. ("Lauren") and James W. and Jean W. ("Parents") hereby submit the following proposed Findings of Fact and Conclusions of Law.

**I.　　PROPOSED FINDINGS OF FACT**

　　　　1.  Lauren is a student eligible for a free and appropriate public education ("FAPE"), consisting of special education and related services, in the form of an Individual Education Program ("IEP") developed in accordance with the procedural and substantive requirements of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA") and analogous state law.  Joint Stipulation of Undisputed Facts ("Jt. Stip.") at ¶ 1.

　　　　2.  Lauren resides within Radnor Township School District and, consequently, the District is the local education agency responsible for the provision of a free and appropriate public education, in accordance with federal and state law, to Lauren.  Jt. Stip. at ¶ 2.

　　　　3.  Lauren has a form of high-functioning autism spectrum disorder.  Jt. Stip., Ex. L, at L004.  Individuals with high functioning autism have proficient verbal skills, and an IQ

within the normal or above normal range. However, they also often have severe deficiencies in communication, pragmatic language and social skills. Ami Klin, Ph.D., and Fred Volkmar, M.D., *Asperger's Syndrome and Pursuing Eligibility for Services: The Case of the Perfect Misplacement* (Yale Child Study Center), *at* http://www.aspennj.org/klin.html (last visited Aug. 21, 2002). The District completed a Comprehensive Evaluation Report ("CER"),[1] completed in July 2000. Jt. Stip. at ¶ 4. The CER describes Lauren as follows:

> Lauren's well-documented, longstanding, complicated, neurological condition and processing difficulties hindered her ability to decipher inferences, to understand ambiguous social conversations and jokes, to judge the relationship of her body to people and objects around her and to acquire skills without immense effort. As a consequence, her intrusive social behaviors, poor judgment, dislike of physical contact, awkward motor coordination and impulse control problems resulted in interpersonal difficulties, rejection by peers and isolation. While her condition included behavior manifested without provocation, frequent instigation by peers in the past prompted occasional verbal and aggressive acts by Lauren. Loss of control further served to remind her of her shortcomings and exacerbated esteem issues.

Stip., Ex. "D," at D004.

4. In the summer of 1999, the District proposed an IEP ("1999 IEP") recommending placement in the Learning Support program in Radnor Middle School for the 1999-2000 school year. Jt. Stip. at ¶ 4.

5. On or about August 24, 1999, Lauren's counsel informed the District's attorney that Lauren's parents disagreed with the program and placement in the 1999 IEP. Jt. Stip. at ¶ 5 and Ex. "A." Because they disagreed with the 1999 IEP and of Lauren's

---

[1] The CER is attached to the joint stipulation as Exhibit D.

negative educational history within the District, [2] the Parents placed her at the Hill Top Preparatory School ("Hill Top"), a private school located in Rosemont, Pennsylvania. Jt. Stip. at ¶ 6.

6. In November 1999 the parties attended the first day of hearing regarding the 1999 IEP. Jt. Stip. at ¶ 7.

7. On December 20, 1999 counsel for the District informed the Hearing Officer that the dispute over the 1999 IEP had been settled. Jt. Stip. at ¶ 8.

8. In March 2000, the District transmitted a proposed Settlement Agreement to Lauren's parents. Jt. Stip., Ex. "B." On May 12, 2000 the Parents executed the Settlement Agreement ("1999 Agreement") attached to the Joint Stipulation as Exhibit "C." In or around November, 2000 the District approved and executed the 1999 Agreement.

9. Counsel for the School District drafted the 1999-2000 Agreement. Jt. Stip., Ex. "B."

10. The 1999-2000 Agreement (which was drafted by the District's counsel) by its own terms, applied only to the 1999-2000 school year. For example:

    a. The introductory paragraph indicates that the Radnor Township School District and Jean and James W, "agree as follows in full and final settlement of all disputes that have or could have arisen between them regarding claims or demands relating to the educational program and placement of Student, including claims for fees, costs, damages and any other claims, *through the school year 1999-2000*, all as more full [sic] set forth herein. "Jt. Stip., Ex. "C";

    b. Paragraph 1 of the 1999-2000 Agreement indicates that the parties are settling all claims for attorney fees and costs "through the conclusion of the 1999-2000 school year", Jt. Stip., Ex. "C," at ¶ 1;

---

[2] The Parents are available to testify as to all of the reasons for Lauren's initial placement at Hill Top, should the Court deem that information material to the decision.

-3-

    c. Paragraph 4 of the 1999-2000 Agreement provides that, pursuant to the Agreement, the District's responsibility for educational programming to the Student for the *1999-2000 school year* shall be discharged. Jt. Stip., Ex. "C," at ¶ 4.

    d. Paragraph 10 of the 1999-2000 Agreement provides that the Parents acknowledge that they are waiving rights under several federal and state laws *through the 1999-2000 school year*. Jt. Stip., Ex. "C," at ¶ 4.

11. The 1999-2000 Agreement contains a clause stating that it constitutes the entire agreement and understanding between the parties and can be modified only in writing executed by the parties. Jt. Stip., Ex. "C," at ¶ 14.

12. The 1999-2000 Agreement specifically contemplated completion of a re-evaluation and proposal of a new IEP prior to the 2000-2001 school year. Jt. Stip., Ex. "C," at ¶ 17.

13. The District did not offer an IEP to Lauren for either the 2000-2001 school year or the 2001-2002 school year. Jt. Stip. at ¶ 16.

14. The District maintains that it did not offer educational programs for those years because, based upon representations of Lauren's prior counsel, Philip M. Stinson, the District believed the Parents had agreed to enter into agreements like the 1999 Agreement for subsequent years. Mr. Stinson had no authority to enter into any such agreement on behalf of Lauren. Testimony of J. Wilson.

15. On November 14, 2000, by a vote of 8 to 1, the Board approved continuing placement of Lauren at Hill Top for the 2000-2001 school year. Jt. Stip., Ex. "E," at D012[3]; Jt. Stip. at ¶ 20. The Board Agenda for November 14 noted that Lauren was making progress in this placement. Jt. Stip., Ex. "E," at E005.

---

[3]     This should be paginated E012.

16. After November 14, 2000, as evidenced by the correspondence attached to the Joint Stipulation as Exhibit "F" the District repeatedly sought execution of an Agreement and Release in return for payment of tuition at Hill Top, but did not propose any other educational program for Lauren. Jt. Stip. at ¶ 21. By taking these actions, the District conditioned provision of an appropriate program upon Lauren's waiver of other civil rights.

17. In May 2001, the Parents terminated prior counsel. Jt. Stip., Ex. "G." That correspondence unequivocally establishes that Mr. Stinson had no authority to agree to a continuation of the 1999 Agreement. The Parents stated in this letter:

> It has come to our attention that you have had a proposed Settlement Agreement from the Radnor School District regarding our daughter Lauren sitting at your office since last December which you have not contacted us about. As a direct result of your inaction on this issue, we might be forced to accept the terms of the Settlement Agreement without our consent.

Jt. Stip., Ex. "G," at G001. The Parents provided a copy of this letter to Radnor Township School district. Nevertheless, the District did not offer an IEP to Lauren for the 2001-2002 school year.

18. The 2000-2001 and this 2001-2002 Settlement Agreements conditioned payment of tuition at Hill Top, an appropriate placement where Lauren was making progress, upon a comprehensive waiver of her retrospective civil rights. At the same time, the District did not offer any other program to Lauren.

19. Contrary to the District's assertions, a public school district can place a student at Hill Top, pursuant to a Basic Educational Circular from the Pennsylvania Department of Education entitled Placement Options for Special Education, attached hereto at Tab 1.

20. Despite having received the correspondence referenced in FF 19 two months earlier, in August, 2001 the District did not offer an IEP to Lauren. Rather, the District offered another settlement agreement to support Lauren's continuation at Hill Top for the 2001-2002 school year. The Parents continued Lauren's placement at Hill Top for the 2001-2002 school year at their own expense. Jt. Stip. ¶ 23.

21. In February 2002, the Parents responded to the District's requests for an executed Settlement Agreement for the 2000-2001 school year by providing a revised Agreement and Release. The 2000-2001 Agreement, as revised by the Parents' counsel, is attached to the Jt. Stip. as Ex. "I." The District refused to accept the revised agreement because it differed from earlier proposals transmitted to prior counsel. Jt. Stip. at ¶ 24 and Ex. "J."

22. After the 1999 Agreement, the District was not proposing that Radnor Middle School (the site of the last agreed upon IEP) would be the pendent placement.[4] The District's proposed agreements contained the following pendency provision:

> The parties agree that in the event that pendency is invoked for any reason, the agreed upon pendent placement will be homebound instruction pending an evaluation to determine an appropriate program and placement, unless the parties agree otherwise.

Jt. Stip. at ¶ 25.

23. By letter dated April 3, 2002 the District contacted the Parents to begin planning Lauren's educational program for the 2002-2003 school year. Jt. Stip. at ¶ 26.

24. On May 28, 2002 the District offered a program and placement for the 2002-2003 school year ("2002 IEP"). Jt. Stip. at ¶ 27.

---

[4] Indeed, such a proposal would have been inappropriate, as Lauren was in high school at the time.

25. The Parents objected to the placement and sought an expedited due process hearing.  Jt. Stip. at ¶ 28.

26. Through no fault of either party, the administrative process will not result in an adjudication of the pendency issue prior to September 1, 2002. Jt. Stip. at ¶ 32.

## II.   DISCUSSION

### A.   Statutory Background

Congress enacted IDEA "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs."  20 U.S.C. § 1400(d)(1)A); *Matthew K. v. Parkland Sch. Dist.*, No. 97-6636, 1998 U.S. Dist. LEXIS 2024, at *7 (E.D. Pa. Feb. 24, 1998); *see also Christen G. v. Lower Merion Sch. Dist.*, 919 F. Supp. 793, 798 (E.D. Pa. 1996).  "The 'centerpiece' of the IDEA's educational delivery system for disabled children is the Individualized Education Program or IEP". *Christen G.*, 919 F. Supp. at 798 (*citing Honig v. Doe*, 484 U.S. 305, 311 (1988)).  The IEP consists of a statement of the services to be provided to the child, an assessment of current educational levels and annual goals for the child.  20 U.S.C. § 1414(d)(1)(A); *Matthew K.*, 1998 U.S. Dist. LEXIS 2024, at *8.  The benefit conferred by the special education provided to the child must be meaningful, not trivial or *de minimis*. *Christen G.*, 919 F. Supp. at 798 (*citing Polk v. Central Susquehanna Intermediate Unit 16*, 853 F.2d 171, 184 (3d Cir. 1988)).

IDEA consists of strict procedural, as well as substantive, requirements.  The procedural protections in IDEA include the parents' right to an impartial due process hearing on complaints regarding educational placement and programs and to state or

-7-

federal judicial review of final administrative decisions. *Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 863 (3d Cir. 1996). To allow for meaningful review, IDEA requires explicit written notice of the placement being offered. *See* 34 CFR §§ 300 – 503, *Christeo Co.*, 919 F. Supp. at 815. A paramount procedural protection is the "stay-put" or pendency rule, requiring that during the pendency of administrative and judicial proceedings, "the child shall remain in the then-current educational placement of such child". 20 U.S.C. § 1415(j).[5] "The 'stay put' provision is designed to ensure stability and consistency in a disabled child's education when that consistency may otherwise be elusive." *K.T. v. West Orange Bd. of Educ.*, No. 01-CIV-3208 (WGB), 2001 U.S. Dist. LEXIS 22265, at *6-*7 (D.N.J. Oct. 23, 2001). The only way parents can waive the pendency protection in IDEA is by affirmative agreement to give up their child's "stay put" rights. *Drinker*, 78 F.3d at 868.

    **B.**    **Standard for Injunctive Relief**

Section 1415(j), or the pendency rule, "functions, in essence, as an automatic preliminary injunction". *Drinker*, 78 F.3d at 864. Thus, once "a court ascertains the student's current educational placement, the movants are entitled to an order without satisfaction of the usual prerequisites to injunctive relief". *Drinker*, 78 F.3d at 864 (quoting *Woods v. New Jersey Dep't of Educ.*, 20 Indiv. Disabilities Educ. L. Rep. (LRP) 439, 440 (3d Cir. Sept. 17, 1993)). Therefore, the traditional standards for issuance of

---

[5]     Before the 1997 reauthorization of IDEA, the "stay put" provision was located at 20 U.S.C. § 1415(e)(3). There was no substantive change in the provision with the reauthorization.

an injunction[6] are inapposite when the Court is applying the "stay put" provision of IDEA. *K.T.*, 2001 U.S. Dist. LEXIS 22265, at *9.

### C.  Application of the Pendent Placement Provision

As a matter of law, Hill Top Preparatory School constitutes Lauren's pendent placement, because when the current dispute arose, there was no waiver of stay put rights, no valid IEP in place and Lauren's actual functioning placement was at Hill Top. Alternatively, the Board's approval of Lauren's placement at Hill Top in November 2000 amounts to an agreement between the parties that Hill Top was Lauren's pendent placement. Accordingly, by virtue of both Lauren's current placement and an agreement between the parties, Hill Top is Lauren's pendent placement under the IDEA.

### 1.  There Was No Waiver of Lauren's Pendency Rights at the Time this Dispute Arose.

Both Pennsylvania contract law and federal decisions interpreting IDEA militate against finding any waiver after the 1999 Agreement. In Pennsylvania, an attorney who lacks express authority to accept the terms offered cannot bind his clients. *See Farris v. J.C. Penney Co, Inc.*, 176 F.3d 706, 711 (3d Cir. 1999). Mrs. W. testified that the Parents never gave Mr. Stinson any authority to enter into an Agreement after 1999. In the absence of such express authority, Mr. Stinson's representations to the District are irrelevant.

Further, under *Drinker*, any waiver of stay put rights must be explicit. 78 F.3d at 867-868. The Court must also construe any ambiguity in the 1999 Agreement against

---

[6]  Accordingly, the Court need not analyze the traditional factors for injunctive relief: likelihood of success on the merits, balancing of harms to the parties, and the public interest. *See Nutrasweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999).

the drafter of the contract – the District.  *See Minnick v. Dollar Fin. Group, Inc.,* No. 02-1291, 2002 U.S. Dist. LEXIS 9115, at *8-*11 (E.D. Pa.  May 21, 2002).

Cases involving alleged waivers of statutory attorney's fees provide an apt analogy.  Like a waiver of stay put rights, an agreement to forego statutory attorney's fees must be explicit.  Under these circumstances, silence can never amount to a waiver of rights.  This is true regardless of what counsel for the defendant believed the agreement to be.  *See Torres v. Metropolitan Life Ins. Co.*, 189 F.3d 331, 333 (3d Cir. 1999).

The 1999 Agreement, drafted by the District, unequivocally and repeatedly references the 1999-2000 school year.  The Agreement's waiver of pendency rights must therefore be limited to that particular school year.  Further, because Mr. Stinson lacked actual authority to extend the 1999 Agreement, the District's reliance on his alleged representations[7] is unavailing.

### 2. Hill Top is Lauren's Pendent Placement Because There Was No Valid IEP in Place When the Dispute Arose.

Because two years have passed with no program being offered to Lauren and no waiver of her right to such a program, it is akin to a case arising when no IEP has been implemented.  As the United States Court of Appeals for the Third Circuit held, where "the dispute arises before any IEP has been implemented, the 'current educational placement' will be the operative placement under which the child is actually receiving

---

[7] The Parents have no way of knowing if Mr. Stinson made any representations to the District.  They do know, however, that (a) they did not authorize an extension of the previous agreements, and (b) Mr. Stinson did not tell them he had extended the 1999 Agreement.  Testimony of J. Wilson.

instruction at the time the dispute arises." *Drinker*, 78 F.3d at 867 (citing *Thomas v. Cincinnati Bd. of Educ.*, 918 F.2d 618, 625-26 (6th Cir. 1990)).

In *Drinker*, the school district placed the student in a "full-time learning support class at Gladwyne Elementary" in accordance with an IEP for the 1992-1993 school year. *Id.* at 861. After developing its own special education program, the school district issued a Notice of Recommended Assignment ("NORA"),[8] which placed the student in a school within the District. *Id.* The Drinkers invoked their hearing rights under the IDEA and unsuccessfully opposed the NORA. *Id.* A three-judge administrative panel affirmed the decision of a hearing officer that ordered the parties to develop a plan for the student to transition to a school within the district. *Id.* at 862. The Drinkers refused to comply and, during a second round of appeals regarding the student's placement, the Drinkers argued that Gladwyne qualified as the student's "current educational placement." *Id.* at 865. The Third Circuit agreed that Gladwyne was the student's current placement because: (1) there was no other valid IEP in place; and (2) there was no other current educational placement. *Id.* at 866.

Relying on *Drinker*, the United States District Court for the District of New Jersey similarly held that, in the absence of a valid IEP, the current educational placement for purposes of the pendency rule is the institution where the student is currently receiving instruction. *K.T.*, 2001 U.S. Dist. LEXIS 22265, at *12. Thus, because the student was enrolled at the Washington School when the parent objected to the implementation of the IEP, the Washington School was the "'pendent placement' for purposes of IDEA's 'stay put' provision." *Id.*

---

[8] The NORA corresponds to the "Notice of Recommended Educational Placement" or "NOREP" used today.

In this case, there was no valid IEP in place for Lauren for either the 2000-2001 or the 2001-2002 school year because the District, in violation of IDEA, failed to make any offer of placement or program to Lauren for either school year.[9] As such, the current dispute surrounding Lauren's 2002 IEP "arises before any IEP has been implemented." Similar to both *Drinker* and *K.T.*, the court must, therefore, look to where Lauren was "actually receiving instruction" in May of 2002. Because Lauren was a student at Hill Top in May of 2002, Hill Top constitutes Lauren's "current educational placement." Further, as discussed in the next section, the Board's actions in November, 2000 shifted pendency to Hill Top.

> **3. Alternatively, When the Board approved Continuation of Lauren's Placement at Hill Top in November 2000, the Parties Agreed to a Change in Placement and Pendency Shifted to Hill Top.**

Even absent *Drinker's* mandate to look to the student's current enrollment status, Hill Top qualifies as Lauren's pendent placement by virtue of the parties' *agreement*. This Court has recognized that a student's pendency may be changed where the school district and the parents agree to the placement change. *See Matthew K.*, 1998 U.S. Dist. LEXIS 2024, at *12-*14; *see also Murphy v. Arlington Central Sch. Dist.*, No. 00–7358, 2002 U.S. App. LEXIS 14392 (2d Cir. July 16, 2002) (decision of state appeals panel constitutes agreement to a change in placement). In *Matthew K.*, the parents

---

[9] As this Court has noted, quoting the United States Court of Appeals for the Ninth Circuit:

> "[T]his formal requirement [of written prior notice] has an important purpose that is not merely technical, and we therefore believe it should be enforced rigorously. The requirement of a formal, written offer creates a clear record that will do much to eliminate troublesome factual disputes many years later about when placements were offered, what placements were offered, and what additional educational assistance was offered to supplement a placement, if any."

*Christen G.*, 919 F. Supp. at 815 (quoting *Union Sch. Dist. v. Smith,* 15 F.3d 1519 (9th Cir. 1994)).

unilaterally withdrew the student from his placement within the district and enrolled him in a private school. *Id.* at *2. Despite that unilateral change, this Court held that "at the moment at which the Appeals Panel found in the parents' favor, there was [an] 'agreement' between the state educational agency and the parents, and a new pendent placement was created." *Id.* at *13-*14. The private school, therefore, qualified as the student's pendent placement by agreement. *Id.* at *14.

Likewise, the District and the Parents *agreed* to change Lauren's pendent placement to Hill Top. The November 2000 Board minutes explicitly authorize Lauren's placement at Hill Top for the 2000-2001 school year. While the Parents' change in Lauren's placement was initially unilateral, the November 2000 board action accepted and ratified the Parents' change in placement. Further, it is undisputed that, at that time, there was no pendency waiver in effect. The action of the Board of Education in approving the placement, therefore, amounted to an agreement to shift the pendency to Hill Top.

Lauren's current enrollment at Hill Top together with the agreement between the parties to shift Lauren's pendency to Hill Top unquestionably establish, as a matter of law, that Hill Top is Lauren's pendent placement under the IDEA. A holding to the contrary would undermine the purpose of the IDEA "to ensure stability and consistency in a disabled child's education when that consistency may otherwise be elusive." *K.T.*, 2001 U.S. Dist. LEXIS 2265, at *6-*7. Accordingly, because Hill Top is Lauren's pendent placement, plaintiffs are entitled to an automatic preliminary injunction ordering that Lauren remain at Hill Top during the pendency of the judicial and administrative proceedings regarding Lauren's 2002 IEP.

### III.  CONCLUSIONS OF LAW

1. In this case, because the administrative process will not resolve the pendency dispute prior to September 1 and because the question presented is solely legal, administrative exhaustion is excused.

2. At the time the District offered the 2000-2001 and 2001-2002 Settlement Agreements to Lauren, the Parents had not waived her right to a free and appropriate public education. Further, the District had not proposed any other program for Lauren. As such, it was not lawful for the District to demand a waiver of rights in order for Lauren to receive an educational program to which she was legally entitled. *See W.B. v. Matula*, 67 F.3d 484, 487 (3d Cir. 1995) ("Indeed, we question the propriety of demanding and receiving a release of [civil rights claims for damages] in exchange for providing services to which a disabled child is otherwise entitled.")

3. The pendent placement provision in IDEA functions as an automatic preliminary injunction. *Drinker v. Colonial Sch. Dist.*, 78 F.3d at 864; *Matthew K.*, 1998 U.S. Dist. LEXIS 2024, at *21.

4. In the absence of an explicit waiver, the District cannot claim that the Parents agreed to waive Lauren's rights under the IDEA after the 1999-2000 school year. As a matter of law, what the District believed the Parents' prior counsel had agreed to is irrelevant.

5. Based upon the following factors, the Court concludes that there was no explicit agreement to waive pendency at Hill Top following the 1999-2000 school year:

    a. The Agreement, drafted by the District, must be construed in the Parents' favor;

      b. The Agreement repeatedly states that the Parents are waiving claims only through the 1999-2000 school year.

      c. The Agreement provides that the District's obligation to provide a free and appropriate public education shall be discharged only during the 1999-2000 school year.

6. Because no valid IEP was in place at the time this dispute arose, Lauren's pendent placement is Hill Top, the operative placement under which she was receiving instruction at the time the dispute arose. *See Drinker*, 78 F.3d at 867.

7. Alternatively, Lauren's pendent placement changed when the Board agreed to fund the continuation of her program at Hill Top. When the parents have unilaterally withdrawn the disabled child from the public school placement, the critical determination is the "last agreed upon placement". *Matthew K.*, 1998 U.S. Dist. LEXIS 2024, at *22.

8. When the Board approved payment of tuition for Lauren at Hill Top for the 2000-2001 school year, with no waiver of pendency in effect at the time, Hill Top became the "last agreed upon placement". *Matthew K.*, 1998 U.S. Dist. LEXIS 2024, at *22.

9.  As the educational program actually functioning, in the absence of a valid IEP, at the time the dispute arose and/or "last agreed upon placement", Hill Top is Lauren's pendent placement pursuant to 20 U.S.C. § 1415(j).


Dated: August 26, 2002

    Catherine Merino Reisman (I.D. No. 57473)
    Stephen G. Rhoads (I.D. No. 47458)
    Danielle M. White (I.D. No. 87772)
    Montgomery, McCracken, Walker & Rhoads, LLP
    123 South Broad Street
    Philadelphia, PA  19109
    (215) 772-7296
    (215) 731-3624 [fax]
    creisman@mmwr.com

    Of Counsel:
    Penelope A. Boyd (I.D. No. 30189)
    Headley Law Offices LLC
    225 South Church Street
    West Chester, PA  19380
    (610) 692-6933
    (610) 692-6754 [fax]
    penelope.boyd@att.net

    Attorneys for Plaintiffs

## **CERTIFICATE OF SERVICE**

I, Danielle M. White, hereby certify that a true and correct copy of the foregoing Proposed Findings of Facts and Conclusions of Law was served by facsimile and United States first-class mail on this date upon:

Jason R. Wiley, Esquire<br>
Sweet, Stevens, Tucker & Katz, LLP<br>
331 Butler Avenue, P.O. Box 5069<br>
New Britain, PA  18901

_____
Danielle M. White

Dated:  August 26, 2002