IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAUREN W., by and through her Parents, JAMES W. AND JEAN W., Plaintiffs, | : : : : : : : : : : | CIVIL ACTION<br><br>NO. 02-CV-4775<br><br>(Judge Davis) |
| v. | | |
| RADNOR TOWNSHIP SCHOOL DISTRICT, Defendant. | | |

### ORDER

AND NOW, this _____ day of _____, 2003, upon consideration of the cross motions for summary judgment filed by Plaintiffs and Defendant, it is hereby ORDERED and DIRECTED and the Defendant's Motion for Partial Summary Judgment on All Claims Arising Prior to the October 2000 Settlement Agreement and Release is GRANTED and all of Plaintiffs' claims arising prior to the October 2000 Settlement Agreement and Release are dismissed.

BY THE COURT:

_____
Legrome D. Davis, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAUREN W., by and through her Parents, JAMES W. AND JEAN W., Plaintiffs, v. RADNOR TOWNSHIP SCHOOL DISTRICT, Defendant. | CIVIL ACTION<br><br>NO. 02-CV-4775<br><br>(Judge Davis) |

**DEFENDANT, RADNOR TOWNSHIP SCHOOL DISTRICT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON ALL CLAIMS ARISING PRIOR TO THE OCTOBER 2OOO SETTLEMENT AGREEMENT**

AND NOW, comes the Defendant, Radnor Township School District (hereinafter referred to as the "District"), by and through its attorneys, Sweet, Stevens, Tucker & Katz LLP, to present this Motion for Partial Summary Judgment, seeking judgment in its favor on all claims arising prior to the October 2000 Settlement Agreement and Release entered into by the parties to this case. In support of this Motion, the District relies upon the facts and arguments set forth in the attached Memorandum of Law.

WHEREFORE, the District respectfully requests judgment as a matter of law on all of Plaintiffs' claims arising prior to the parties' October 2000 Settlement Agreement and Release.

                                                  Respectfully submitted:

                                                  **SWEET, STEVENS, TUCKER & KATZ LLP**

Date: July 28, 2003                By: /s/ Jason R. Wiley
                                                **Ellis H. Katz,** Attorney I.D. No. 34835
                                                **Jason R. Wiley,** Attorney I.D. No. 79874
                                                **331 Butler Avenue, P.O. Box 5069**
                                                New Britain, Pennsylvania 18901
                                                215-345-9111
                                                Attorneys for Defendant,
                                                Radnor Township School District

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LAUREN W., by and through her Parents, JAMES W. AND JEAN W., Plaintiffs, | : : : : : : : : : | CIVIL ACTION<br><br>NO. 02-CV-4775<br><br>(Judge Davis) |
| v. | | |
| RADNOR TOWNSHIP SCHOOL DISTRICT, Defendant. | | |

**<u>DEFENDANT, RADNOR TOWNSHIP SCHOOL DISTRICT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT ON ALL CLAIMS ARISING PRIOR TO THE OCTOBER 2OOO SETTLEMENT AGREEMENT</u>**

AND NOW, comes the Defendant, Radnor Township School District (hereinafter referred to as the "District"), by and through its attorneys, Sweet, Stevens, Tucker & Katz LLP, to present this Memorandum of Law addressing Plaintiffs' challenge to the validity of an October 2000 Settlement Agreement and Release entered into by the parties to this case.

**I.     <u>Factual and Procedural Background</u>**

Plaintiff, Lauren W. (hereinafter referred to as "Lauren"), is a special education student who resides with her parents, Plaintiffs, James W. and Jean W. (hereinafter referred to as the "Parents"), within the geographic boundaries of the District. In seventh grade, the 1998-1999 school year, Lauren attended the Radnor Middle School. In eighth grade, the 1999-2000 school year, she left the District to attend the Hill Top Preparatory School ("Hill Top"), a private school in Rosemont, Pennsylvania.

After she left the District, *in or around August 1999* Lauren's parents requested a special education administrative due process hearing ("First Due Process Hearing"), seeking reimbursement from the District for Hill Top tuition. Before the First Due Process Hearing concluded, and before the Hearing Officer reached a decision, the Parents and the District entered into a Settlement Agreement ("Agreement") in or around October 2000. (See, Settlement Agreement and Release attached as Exhibit "A").

In exchange for the District's agreement to pay tuition to Hill Top for the 1999-2000 school year and the Parents attorney's fees, the Parents agreed to a general release. (Exhibit "A", ¶ 2,9,10,12). In accordance with the terms of the Agreement, the District reimbursed the Parents $21,975.00 for 1999-2000 Hill Top tuition. (Exhibit "A", pages 9-11).

Approximately one-and-a-half years later, on or around June 18, 2002, the Parents filed a second request for a Due Process Hearing ("Second Due Process Hearing"). This time, the Parents sought reimbursement for Hill Top tuition for the 2000-01 and 2001-02 school years. The Parents also indicated that they intended to raise claims arising prior to the October 2000 Agreement. (See, Exhibit "B").

The District filed a Motion to preclude Plaintiffs from presenting claims arising prior to the Agreement. (See, Radnor Township School District's Motion to Limit Issues at Hearing (hereinafter referred to as "Motion"), attached as Exhibit "C"). The District requested, based upon case law cited in their Motion, that the Due Process Hearing Officer limit the hearing to claims arising after the October 2000 Agreement. (Exhibit "C").

During the second day of the Second Due Process Hearing, the Hearing Officer addressed the District's Motion[1]. (See, Transcript of Due Process Hearing of August 2, 2002, pages 120-128, attached as Exhibit "D"). The Hearing Officer concluded that the Agreement was valid and binding, and granted the District's Motion[2]. (Exhibit "D", page 125). The Parents were precluded from presenting any claims arising prior to the Agreement. (Id.).

The Hearing Officer issued his decision and order on all remaining claims on November 30, 2002. (See, Hearing Officer Decision and Order attached as Exhibit "E"). The Hearing Officer made a finding of fact that:

> The Parents and the District signed an agreement in October 2000 as a result of a due process hearing on 11/22/99 that the District would pay tuition for Lauren to attend Hill Top School during 1999-2000 in lieu of FAPE and in lieu of offering a special education within the District…Both Parents signed the agreement voluntarily and with a full understanding of to what they were agreeing.

(See, Exhibit "E", Finding of Fact No. 5, pages 3-4, citing Transcript pages 46, 50, 754, 755, 789-90, and Hearing Exhibits S-7, P-104, and P-111).

The Parents filed an appeal of the Hearing Officer's Decision to the Commonwealth of Pennsylvania Special Education Appeals Panel (hereinafter referred to as the "Appeals Panel"). (See, Exhibit "F"). One of the issues raised on appeal was whether the Hearing Officer erred in refusing to allow the Parents to present claims arising prior to the October 2000 Agreement. (Exhibit "F", pages 26-27). The District

---

[1] At the time of the District's Motion, the Parents were represented by the same counsel as in the present complaint, and had a full and fair opportunity to present any evidence they felt to be relevant to the Hearing Officer's ruling. (Exhibit "D", page 120-128).

[2] Despite upholding the District's Motion, the Hearing Officer indicated that he would be willing to reconsider his ruling if the Parents could provide evidence that the Agreement was either subject to fraud, or not executed as agreed. (Exhibit "D", page 126, 127). No such evidence was presented on the record.

responded to the Parents' appeal arguing that the Hearing Officer had not committed error of fact or law in refusing to hear claims which were barred by a valid enforceable settlement agreement and release. (See, Exhibit "G", pages 18-20).

On January 22, 2003, the Appeals Panel issued its Decision and Order. (See, Exhibit "H"). In its Decision, the Appeals Panel affirmed the Hearing Officer and concluded that the Parents claims were barred by the Agreement. (Exhibit "H", pages 19-22).

As a preliminary matter in this litigation, Plaintiffs have requested that the Court consider reversing the Hearing Officer's decision, affirmed by the Appeals Panel, that the October 2000 Agreement bars claims arising prior to the date of the Agreement. Both the Hearing Officer and the Appeals Panel concluded that the Parents claims arising prior to the October 2000 Agreement were barred. (Exhibit "D", page 125; Exhibit "H", pages 19-22).

## II.  Standard of Review

In reviewing an administrative adjudication in IDEA cases, the Court must give "due weight" to the administrative proceedings and the educational experience and expertise applied therein. S.H. v. State-Operated School District of the City of Newark, --F.3d--, 2003 WL 21640796 (3d. Cir. 2003); Board of Education of the Hendrick Hudson Central School District v. Rowley, 458 U.S. 176, 206-07, 102 S.Ct. 3034, 3051, 73 L.Ed.2d 690 (1982); Carlisle Area School v. Scott P., 62 F.3d 520 (3d Cir. 1995), cert. denied, 517 U.S. 1135, 116 S.Ct. 1419, 134 L.Ed.2d 544 (1996); Susan N. v. Wilson School District, 70 F.3d 751, 758 (3d Cir. 1995) (accepting the standard set forth by the First Circuit in Town of Burlington v. Department of Education, 736 F.2d 773 (1st Cir.

1984)); see also, Wexler v. Westfield Board of Education, 784 F.2d 176 (3d Cir.), cert. denied, 479 U.S. 825, 107 S.Ct. 99, 93 L.Ed.2d 49 (1986).

Recently, in S.H., the Third Circuit analyzed the definition of "due weight." The Court held, the "due weight" standard as a modified *de novo* review standard. In applying the modified *de novo* standard, "Factual findings from the administrative proceedings are to be considered *prima facie* correct. 'If a reviewing court fails to adhere to them, it is obliged to explain why.'" S.H., 2003 WL 21640796, at 7, quoting, MM v. School District of Greenville County, 303 F.3d 523, 531 (4th Cir. 2002) (additional citations omitted).

The Third Circuit also provided guidance as to how deference should be provided to Pennsylvania's two tiered system of administrative review, holding that the district court reviewing an administrative decision is required to defer a hearing officer's factual findings "unless it can point to contrary non-testimonial extrinsic evidence on the record." S.H., 2003 WL 21640796, at 8 (citations omitted).

When applying the modified *de novo* review standard to the Hearing Officer's factual findings in this case, the administrative record supports the conclusions made by the Hearing Officer and the Appeals Panel that the Parents' execution of the Settlement Agreement and Release was knowing and voluntary, and therefore, the Agreement bars claims which arise prior to the October 2000.

### III.    Argument

As a general rule, when a settlement agreement includes the release of civil rights and IDEA claims, courts should "inquire into the totality of the circumstances surrounding execution of the agreement" and "decline to enforce the agreement unless its

5

execution was knowing and voluntary." See, W.B. v. Matula, 67 F.3d 484, 497 (3d Cir. 1995), citing Coventry v. United States Steel Corp., 856 F.2d 515, 524 (3d Cir. 1988) and Salmeron v. United States, 724 F.2d 1357, 1361 (9th Cir.1983) ("[a] release of claims for violations of civil and constitutional rights must be voluntary, deliberate, and informed") (additional citation omitted).  In considering the "totality of the circumstances" to determine whether the execution of an agreement was "knowing and voluntary" the Third Circuit set forth several factors to consider: "[W]hether (1) the language of the agreement was clear and specific; (2) the consideration given in exchange for the waiver exceeded the relief to which the signer was already entitled by law; (3) the signer was represented by counsel; (4) the signer received an adequate explanation of the document; (5) the signer had time to reflect upon it; and (6) the signer understood its nature and scope." Matula, 67 F.3d at 497 citing Cirillo, 862 F.2d at 451; Coventry, 856 F.2d at 523.  The Third Circuit further stated, "We may also look to whether there is evidence of fraud or undue influence, or whether enforcement of the agreement would be against the public interest." Id., citing Coventry, 856 F.2d at 522-23.

Notwithstanding the "due weight"[3] that should be afforded to the Hearing Officer's finding of fact that "[b]oth Parents signed the agreement voluntarily and with a full understanding of to what they were agreeing" (see, Exhibit "E", Finding of Fact No. 5, pages 3-4), and the Appeals Panel's subsequent affirmation of the Hearing Officer's decision (Exhibit "H", pages 19-22), the totality of the circumstances supports no other conclusion.

---

[3] See, S.H. supra.

As required under a "totality of circumstances" analysis, and as found by the Hearing Officer, the language of the Agreement is "clear and specific". (Exhibit "D", page 125). For example, in the introductory paragraph, the Agreement provides that the parties are agreeing to "full and final settlement of all disputes that have or could have arisen between them regarding all claims or demands relating to the educational program and placement of Student, including claims for fees, costs, damages and any other claims, through the school year 1999-2000." (Exhibit "A", introductory paragraph).

Paragraph 9 of the Agreement expressly provides that:

> The Parents specifically acknowledge and agree that the District's agreement to pay the amount above-stated and the waiver of the District's right to challenge the Parents' request for tuition reimbursement are intended to provide the Parents with consideration <u>for a settlement and compromise of all outstanding claims that they may now have or which may in the future arise relative to the above disputes</u>.

(Exhibit "A", ¶ 9) (emphasis added).

The general release provision of the Agreement provides:

> The Parents acknowledge and agree that by accepting the aforesaid payment they are waiving rights that they may otherwise have under the Individuals with Disabilities Act, 20 U.S.C. Sections 1400-1485 (IDEA) and its implementing regulation, 34 C.F.R. Part 300; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Section 794, and its implementing regulation, 34 C.F.R. Part 104; the Americans with Disabilities Act of 1990, 42 U.S.C. Sections 12101-12213; Sections 1983 and 1988 of the Civil Rights Act, 42 U.S.C. Sections 1983, 1988: Chapters 14 and 15 of the regulations of the State Board of Education, 22 Pa. Code Chapts. 14 and 15; Chapter 342 of the standards of the Pennsylvania Department of Education 22 Pa. Code Chapped. 342; and any other state or federal law, and all complaints or enforcement actions brought by Student or Parents under any of these laws or regulations,

> concerning the educational evaluation, independent evaluations, program, placement, related services, supplemental and/or private tutoring and summer programming of Student through the 1999-2000 school year, and consistent with the provisions herein.

(Exhibit "A", ¶ 10).

And Paragraph 12 of the Agreement continues:

> The Parents, on their own behalf and on behalf of the Student, release and forever discharge the District and its officers, directors, employees, agents, attorneys, and insurers from any claim or demand of any kind, administrative or judicial, concerning the education of the Student through the end of the 1999-2000 school year, including claims or demands for tuition reimbursement, compensatory education, attorneys fees and costs, damages, and equitable relief, provided, however, that nothing in this agreement shall preclude claims or demands directly related to the implementation of this agreement. The Parents shall take all action necessary, if any, to discontinue with prejudice any action currently pending and shall refrain from taking any action that has the effect of reinstating or reviving or initiating any similar action, provided, however, that nothing in this agreement shall be deemed to limit or preclude the initiation of any lawful proceedings necessary to enforce this agreement. The Parents warrant (a) that they have received written notification of their rights under state and federal law as parents of a child with disabilities, (b) that they are fully aware of these rights and of the extent to which they are waiving them in this agreement, (c) that they are fully aware that they are waiving rights on behalf of the Student, (d) that they have had the opportunity to consult with counsel concerning their rights and this agreement, (e) that they are satisfied with the representation and advice that they have received from their counsel, and (f) that they are signing this agreement, including this waiver of important rights, voluntarily.

(Exhibit "A", ¶ 12)

The language of the Agreement is clear and specific as to its terms and the expectancies to each party.

Next, the consideration given in exchange for the waiver exceeded the relief to which the signer was already entitled by law. At the time the Agreement was raised, the parties were engaged in an administrative due process hearing[4] to determine whether the Parents were entitled to reimbursement for Hill Top tuition. There is no dispute that at the time of the Agreement Lauren was entitled by law to a free and appropriate public education.

However, at the time of the Agreement, after unilaterally withdrawing Lauren from the District and enrolling her at Hill Top, it was the Parents' contention that a free and appropriate education could not be provided by the District, and that a program at Hill Top was appropriate. (Exhibit "D", pages 46-47). Conversely, it was the District's contention that it had offered a free and appropriate public education for Lauren at the District, that Hill Top was not an appropriate placement for her, and consequently, that the District should not be required to fund the tuition costs for Lauren to attend Hill Top. (Exhibit "D", pages 46-47).

Rather than litigating the matter further, and having a decision rendered by the Hearing Officer as to the appropriateness of either program, the parties entered into the Agreement, whereby the Parents agreed to a general release in exchange for one year of Hill Top tuition. (See, Exhibit "A"). Dr. Kitty Lugar, the District's Director of Pupil Services, testified:

> [W]e had on the table a program that we felt would meet Lauren's needs. However, the family had the belief that Hill Top could provide services and programs above and beyond, or more appropriate, in their opinion, for Lauren's needs. So, in essence, we were saying this isn't what we feel is the most appropriate program. However, since we

---

[4] First Due Process Hearing

9

> respect the Parents' wishes, we would agree to pay for that in lieu of a program.

(Exhibit "D", pages 46-47).

Thus, the consideration provided by the District under the Agreement was more than the Parents were entitled to by law.

The Parents were also represented by counsel at the time they executed the Agreement. In fact, the Agreement was signed by the Parents with their attorney acting as the witness to their signatures. (Exhibit "A").

The Parents also certified that not only were they represented by counsel, but that they received an adequate explanation of the Agreement. Specifically, The Parents certified that "they have had the opportunity to consult with counsel concerning their rights and the agreement" and "that they are satisfied with the representation and advice that they have received from their counsel." (Exhibit "A", ¶ 12(d) and (e)).

On or about March 6, 2000, counsel for the District forwarded the Agreement to the Parents' counsel for execution. *(Joint Stipulations of Fact)* The Parents did not execute the Agreement until May 12, 2000. *(Id.)* Thus, the Parents had more than two months to review the Agreement before execution.

The Parents also warranted that they understood the nature and scope of the Agreement. The Parents expressly warranted *inter alia* that:

> . . . (a) that they have received written notification of their rights under state and federal law as parents of a child with disabilities, <u>(b), that they are fully aware of these rights and of the extent to which they are waiving them in this agreement, (c) that they are fully aware that they are waiving rights on behalf of the Student</u> (d) that they have had the opportunity to consult with counsel concerning their rights and this agreement, (e) that they are satisfied with the representation and advice that they have received

10

>      from their counsel, and (f) that they are signing this agreement, including this waiver of important rights, voluntarily.

(Exhibit "A", ¶ 12(a) through (f)) (emphasis added).

Moreover, immediately above the signature lines is the following admonition in bold and capital letters: "**CAUTION: READ THIS ENTIRE AGREEMENT, WHICH CONSISTS OF FOURTEEN PARAGRAPHS BEFORE SIGNING YOUR NAME BELOW.**" (Exhibit "A"). Although it was not requested or required, the Parents also initialed every page of the document, including a revision made by their counsel. (See, Exhibit "A").

Finally, the Parents have expressly warranted that the Agreement was signed by them voluntarily, and that they recognized that by executing the Agreement that they were waiving important rights. (See, Exhibit "A", ¶ 12(f)). During the Second Due Process Hearing, the Parents verified this fact. (Exhibit "D", pages 790-791).

Given the totality of the circumstances, the Hearing Officer therefore concluded as a Finding of Fact that "[b]oth Parents signed the agreement voluntarily and with a full understanding of to what they were agreeing." (See, Exhibit "E", Finding of Fact No. 5, pages 3-4, <u>citing</u> testimony and documentary evidence in support of this factual conclusion), and such conclusion was affirmed by the Appeals Panel. (Exhibit "H", pages 19-22).

In view of the totality of the circumstances, giving due weight to the Hearing Officer's conclusions of fact, the Parents clearly entered into the Agreement "knowingly and voluntarily." Therefore, the release and waiver provisions of the Agreement are valid and the Parents' claims arising prior to October 2000 should be dismissed.

## IIII.  Conclusion

The District respectfully requests judgment as a matter of law on all of Plaintiffs' claims arising prior to the parties' October 2000 Settlement Agreement and Release.

Respectfully submitted:

**SWEET, STEVENS, TUCKER & KATZ LLP**

Date: <u>July 28, 2003</u>     By:   /s/ Jason R. Wiley
                                                     **Ellis H. Katz,** Attorney I.D. No. 34835
                                                     **Jason R. Wiley,** Attorney I.D. No. 79874
                                                   **331 Butler Avenue, P.O. Box 5069**
                                                   New Britain, Pennsylvania 18901
                                                   215-345-9111
                                                   Attorneys for Defendant,
                                                   Radnor Township School District

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAUREN W., by and through her Parents, JAMES W. AND JEAN W., : Plaintiffs, : : v. : : RADNOR TOWNSHIP SCHOOL : DISTRICT, : Defendant. : | CIVIL ACTION NO. 02-CV-4775 (Judge Davis) |

## CERTIFICATE OF SERVICE

I, Jason R. Wiley, Esquire, counsel for Defendant, Radnor Township School District, hereby certify that a true and correct copy of the foregoing Motion for Partial Summary Judgment, and Memorandum of Law in support thereof was forwarded to the following counsel at the following address, via Federal Express on this date:

Catherine Merino Reisman, Esquire
Montgomery, McCracken, Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA  19109-1099

**SWEET, STEVENS, TUCKER & KATZ LLP**

Date: <u>July 28, 2003</u>    By:  <u>/s/ Jason R. Wiley</u>
**Ellis H. Katz,** Attorney I.D. No.  34835
**Jason R. Wiley,** Attorney I.D. No.  79874
**331 Butler Avenue, P.O. Box  5069**
New Britain, Pennsylvania  18901
215-345-9111
Attorneys for Defendant,
Radnor Township School District

13